**Brian Berson**
CBN 130249
1000 Brannan St.
#488
San Francisco, CA 94103
415-788-2707

Attorney for: ADONIS TORRES

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 20-0480-06 WHA |
| | ) |
| Plaintiff, | ) **ADONIS TORRES'** |
| | ) **SUPPLEMENTAL** |
| | ) **SENTENCING MEMORANDUM** |
| | ) |
| vs. | ) Date: March 1, 2022 |
| | ) Time: 2:00 p.m. |
| ADONIS TORRES | ) Courtroom: The Honorable |
| Defendant. | ) Judge Alsup |

The defense sentencing memorandum (dkt. 192), p.2, pointed to a "significant error" in the Justification section of the PSR. Regrettably, the significant error was instead that of below signed counsel. The PSR was correct about the prior convictions. The three that were overlooked by counsel weren't counted on Mr. Torres' CH score because they were timed out from consideration under the Guidelines.

The first, at PSR paragraph 38, occurred more than 16 years ago, when Mr. Torres was 18 years old. It involved $20 of cocaine. The

second (paragraph 39) occurred a year later and was charged as a misdemeanor, involving possession for sale of cocaine base. The third (paragraph 40) was an illegal entry conviction in 2010.

In view of these timed out convictions – and despite their nature – the argument that Mr. Torres' CH 2 was overstated is withdrawn.

The government's sentencing memorandum concentrates significantly on arguing against a minor role adjustment for Mr. Torres. However, although we asserted the minor role during plea negotiations and the PSR process, we are not now arguing for that two-point adjustment and didn't do so in the defense sentence memorandum. We acknowledge that Mr. Torres was not "substantially less culpable" than his codefendants. However, he was less culpable.

The government concedes that Mr. "Torres did not participate in higher-level planning or organizing of the overall conspiracy, and he did not exercise decision-making authority over others." *Dkt*. 193 at 4. However, the government points out that he knew the general scope and structure of the organization, "including that Leydis was one of the main drug sources." Of course, he did. Leydis was his more culpable girlfriend's mother. The other codefendants also knew the organization's structure.

Maldonado, the fugitive who the government places at the bottom (*id.*) lived with Mayorquin, who the government places at the top,

with Leydis. According to the complaint and incorporated affidavit
the government filed to start this court case, Ms. Maldonado is
heard discussing 324 grams that she weighed out at Cruz's request.
Maldonado says it's the "yellow" and a little of the "blue."
According to the government, these were code words for types of
fentanyl. *Dkt.1* at 13. This is four times the amount of fentanyl
that the government notes Mr. Torres was arrested with. *Dkt*. 193
at 7.

The government asserts that Mr. Torres is at the same level of
culpability as Benegas and Ivan Cruz. *Dkt*. 193 at 5. Yet,
according to the government's complaints, both were heard on heard
on the wire supplying fentanyl to the upper-level suppliers. *Dkt*.
1 at 12-13; *Dkt*. 1 at 5 (CR20-480-7.) One of them also apparently
recruited another coconspirator. *Dkt*. 1 at 12-13. We are not aware
of evidence that Mr. Torres recruited others or supplied drugs to
those above him.

CONCLUSION

The conclusion of our first sentencing memorandum still applies:
Principles of codefendant disparity should lead this Court to
sentence Mr. Torres to no more than any of his codefendants
receive. Even without that disparity, the Court's concern about
the ravages of fentanyl should be balanced with Mr. Torres'
motivation to engage in this crime, as well as his own sad
history.

Respectfully submitted,

Date: February 24, 2022

_____/s/_____
Brian P Berson
Attorney for Adonis Torres